May it please the court. My name is James Shulman. I'm here on behalf of appellant Jerry Lyle Saldua Mercado and I see the court has already divided the time between myself and counsel for the other appellants. And first thing, Your Honor, I'd like to respond to the court order issued last Friday asking that Article 3 Compromise of Controversy standing specifically with respect to the fact that there is no appellee in this case. And I would start off saying while there is no appellee in this case, that situation while unusual is not unprecedented. There have been other cases heard by appellate courts including this court where they've taken cases where there is no appellee. But isn't this almost akin to a mandamus action where, you know, the real party and interest is somebody else? It seems as though someone should be representing the district court judges who, you know, took this action to change the rule to and then impose, you know, discipline on that. Well, I understand that and I think the cases that have come up specifically from bankruptcy courts where the trial court judges have sua sponte authority to intervene and make rulings that don't involve other parties. One of those cases was Eliopo versus Devin Durenberg trustee and the United States trustee heard in this court in 2003 or heard in this court. And that case involved a court ruling reducing a debtor's attorney's fee. But with respect, counsel, I read your cases and I just don't see it here. There are zero dollars at present involved. Every one of the other cases that you cited involved some real controversy, some real issue, small amounts, big amounts, whatever it may be. But in this case, you've got, according to March 2nd letter, it says one of the debtors in this case, I want to make sure you get the facts right, had to pay around $1,000 more to unsecured creditors than they would have with the bankruptcy court's denial of the deferred Chapter 3 plan. And yet, the debtors in this case, the unsecured creditors are zero. Thank you, Your Honor. The problem is they would have been zero, there would have been no controversy if the debtors' proposed plan language had been approved. The controversy here is that the court's required plan language mandated excess dividend payments to unsecured creditors not required by the bankruptcy code. My client, Mr. Mercado, in fact, paid over $1,000, almost $1,000 more through his payments, a below-median income debtor, met the test the bankruptcy court clearly lays out about what must be paid to creditors in a bankruptcy. He met all of those tests, he proposed a plan to pay what was required, and he removed the provision of the court required saying he had to stay in the case for a minimum duration. That minimum duration was not required by the code, and that caused him the damages that are involved for him. And he's one debtor out of last year in the Ninth Circuit, there were over 27,000 Chapter 13 debtors. So you're saying if he had the estimated plan, he could have ended it earlier and so wouldn't have to pay unsecured creditors? Well, he would have ended it when he paid those creditors specifically what he proposed and laid out to all of the parties in his plan. It wasn't hidden. He estimated they would get zero. Right. They knew that. And so I think there are dollars involved here very much. I understand. And if they had a problem with that, they could have objected, these unsecured creditors could have objected, and that would have triggered a three-year, I would assume, given the amount of money at stake, a three-year term. That is exactly correct, Your Honor. And that is what this court held en banc in the Danielson v. Flores case. They went through a lengthy discussion about when there is a minimum duration created. And the most telling point was they said it's only created when the trustee or a creditor exercises that discretion that they have to file an objection. The objection itself creates for below-median income debtors a minimum 36-month commitment period, and for an above-median debtor, 60 months. Can I ask you, I've been speculating about this, and I just would like to hear from you. In these types of Chapter 13 cases, who are generally, what are the nature generally of the unsecured creditors? Well, they can be medical debts, they could be credit card debts, they could be payday loans. Those are the clients that I and I believe most of my colleagues see on an everyday basis. They could involve a unique personal individual that the debtor owed money to. So do those people, the unsecured creditors, they get notice of the plan? Absolutely. So they have the opportunity to object? They get notice and an opportunity to object up to the 341 meeting, which is usually about a month after the case is filed. Every creditor in these cases got notice. And for these appellants, because the lower court delayed the confirmation, they were required to get re-notices frequently in the case, and at the end of that time, none of them elected to assert a 1325B objection. See, you could have, I don't know, you could have taken this on mandamus once the bankruptcy judge put it on that list of things that are going nowhere and brought a petition for mandamus ordering them to act consistent with the code and the plan. I mean, it's just one way to get around this standing question. Until the trial court decision came down, maybe six months after these cases were going to create an implied mandatory minimum duration, there was no reason to believe the procedures that we had filed, the case language we used was identical from what had been used for the prior many decades or close to it. So prior to 2016, you were allowed to use these estimated terms. That's clear. Yes. And these — and the judges that signed the trial court opinion, I believe from Amicus brief, they signed over 4,000 confirmation orders using this language. Estimated language. So the dispute arose when we realized that we needed to appeal that. And did they give any rationale for why they wanted to go to minimum terms instead of estimated terms? At the time the plan was created, no. As was also, I think, addressed in Amicus brief, the court referenced that the court — we're in the San Jose division. The San Jose division plan differed from the Oakland and San Francisco division plans on this language for the last three or four years. And when the San Jose division judges discussed this, they referenced they wanted to become — they did this because they wanted more uniformity. They were concerned about judicial resources where judges from the other divisions might be stepping in. They wanted familiarity. It wasn't because — they never articulated, to my knowledge, that this was the law until the opinion came down. So the practice is different in every district in California? So the practice throughout California, in fact, throughout the Ninth Circuit, the Bankruptcy Rules Committee, the National Advisory Committee, came up with a model plan a few years ago, and they sent it out for review after they approved a rule where that district, at that point, could adopt — opt out of that and adopt its own model plan. To my knowledge, every model plan adopted in the state of California contains that as the standard language, with the caveat that they must afford debtors who are given the exclusive right to propose a plan under Section 1321 of the Code the opportunity to put in optional or additional provisions not inconsistent with the Code, which is where we've taken on the dispute. I think another thing that's — Sorry, counsel. My question is, is there other districts in California that do allow estimated plans now, or a few now? My knowledge is that all of the districts have the same required language that we're appealing. I don't know that it's being appealed anywhere else. The reality is it's taken appellants four years to get here for consumer bankruptcy cases, basically on a pro bono basis. These cases aren't going to show up very often. And this is our — I believe our opportunity, not only for our appellants, but to clarify that all of the debtors in this circuit have a right to propose a plan, not inconsistent, and they shouldn't be forced to accept language that's inconsistent with the Code. But with respect, I mean, I understand your concern. I understand why you think it is inappropriate under the Code. But any way you cut this, from my perspective, you're asking us to give you an advisory opinion, because I don't — who's your adversary? Oh, our — the adverse party, in effect, like these other cases of Eliopo in this circuit, Cunningham v. Ayers in the Fifth Circuit, Ayers was the bankruptcy judge who had ruled against a trustee. But you haven't sued a bankruptcy judge. I don't think we're — we're asking the Court of Appeals to clarify that the debtors have a right to include this plan language. I understand. And the damages that flow are the — I understand. What I'm concerned about is this. I'm not questioning their damages. I'm just saying I don't see anybody opposing you. So — And, like, the cases that you've cited, and I appreciate that you're sending those, I think they're all distinguishable from your situation. Well — Let me ask you your — I'm using — No, let me ask — I have a question. I'm struggling with the standing question, too. Mercado, the guy, he's the one who paid $1,000 that he doesn't think he should have had to pay. Yes. Would he be — if we were to rule in your favor, would he be able to go recoup that $1,000? Yes. The remedy is here also. It's one of the things we address. This Court can order the trustee to recover the overpayments from the creditors in Mr. Mercado's case. Chapter 13, trustees pay creditors with monthly payments with maybe 50 or 500 debtors' payments included in one payment. That money could be offset to pay back. That's been happened in the past where there's been overpayments. Also, this Court can order the lower court to correct the plans. So there's a real remedy here. And I think on the standing issue, which I focused my time on, most important, this isn't a case where there was no other record before this Court. There were no discussion of the issues. Because the lower courts issued lengthy opinions of 23 and 34 pages respectively, they detailed their legal reasoning in those opinions, the reasoning that's at issue here. And they do provide this Court with a thorough explication of the opposing position as if they were opposing parties. So there are real legal issues before you. There are real legal issues, just no real parties? Well, the debtors are the real parties. To meet the standing requirements, when we responded to the Court, we looked for what's required. Nowhere does it say there has to be an appellee. And that is consistent with cases that have come to appellate courts through the bankruptcy courts. That's the situation where if they have no right here, these clients will never have a chance to vindicate their rights. This is their only opportunity. Thank you, Your Honors. All right. Thank you, Counsel. Ms. Hammes? Good morning. Thank you. I'm Norma Hammes, and I am representing Mark Candela, Nanette Sisk, and Dennis Escarcega. I wanted to mention regarding the other party, the absence of another party, in our appeal, that there are actually several code provisions in the bankruptcy code that permit bankruptcy judges to take action against the debtors sua sponte. So this is not the only situation that could arise. It is actually, it is one of the situations where the debtor can sua sponte, I'm sorry, the bankruptcy court can sua sponte deny confirmation based on Section 1325A for certain reasons. One of them is a finding of a lack of good faith. And that's what the bankruptcy court did in this situation. Our big... Did any of your clients have injury based off of the bankruptcy court's orders? Yes. Yes, indeed. What was the injury? Well, and it's happening right now, and that is as their plans are continuing, they will wind up paying more to the general unsecured claims than they would have if their original initial plans had been confirmed. Do you know how much? It depends largely on what the trustees' fees are because the trustees' fees vary from month to month. The general unsecured creditors will get more. All the claims have been filed and final for several years already, but the trustees' fees are the things that would change. And the injury is because they change it from an estimated plan to a fixed plan. They could have ended it earlier. Exactly. Exactly right. Yeah. So anyway, so there are other provisions in bankruptcy code that could generate a bankruptcy court decision against the debtor where there would be no other party to that particular action. And the court would be in its power to do that. So the fact that the circuits haven't seen too many of these cases is understandable. Like Mr. Shulman mentioned, it's not easy to get this far. We had to go up the ladder requesting leave to appeal because we initially had an interlocutory order in terms of the denial of the initial plan. We couldn't get here that way, so we had to go back down and get the bad plan confirmed so we could appeal that. And now we're up here four years later. Not very many debtors' attorneys are willing to take that cost. But we felt that this is an and we believe that it's actually a very important issue. Do you know the answer if other districts allow estimated plans? They used to. I don't know. Actually, in the 80s and 90s, my husband and I have been practicing since 78. In the 80s and 90s, estimated plans were quite common. And as I put in the brief, the reference to one of the elements of finding good faith being probable and expected duration of the plan was evidence of the fact that they were estimated terms. Because if they were required to be fixed terms, that particular standard would not have been expressed that way. It would have been expressed in the way of what is the precise term of the plan, rather than the probable or the expected duration. Can I ask you, does the model, the national model plan, should have estimated or fixed duration? I'm not entirely sure. I do know that one aspect of our appeal, which is kind of like the flip side of the coin there, which is being able to specify a fixed dollar amount, you are able to do that in the national plan. And the reason I'm not that familiar with the national plan is because many districts, of course, across the country have opted out of that national plan, including the northern district. So we don't deal with it normally. But I want to clarify also that the federal, the rule that allows the national plan or requires a opt-out, that wasn't in effect when we filed our cases, but the judges in our district were kind of acting as if it was already in effect. And I would like to really emphasize what Mr. Shulman said about the opinions. The bankruptcy court opinion and the BAP opinion were very lengthy. I think a total of more than 50 pages, 50 published pages. And they laid out in great detail what their legal argument was. They never presented it to us before they came down, the bankruptcy court, never said anything about these issues whatsoever before they came down with their opinion. But it's in great detail. Did the BAP question standing or address standing? No, not at all. Not at all. And in fact, they did grant our motion for leave to appeal because we knew that the denial of confirmation was likely to be not a final order, an interlocutory. But they, so they granted that and they heard it. And unfortunately, it didn't come out well for us. The real, one important part really is to really hone in on the issue of good faith, because the bankruptcy court does have the right to deny confirmation based on a lack of good faith. But across the board, dating back to the Goeb opinion of this court back in 1982, all the way up to even just last summer in a Chapter 11 case, which also, Chapter 11 has precisely the same language requirement for the plans being filed in good faith, exactly the same language. And this court in last summer, in Garvin v. Cook, made the same finding and holding consistent with everything prior to that, that a finding of lack of good faith is a matter of law. It has to be made on a case-by-case basis. It has to be a factual analysis of that case and the totality of circumstances in that case. And that's exactly what the bankruptcy court did not do in our cases. They held that our debtors failed the good faith requirement by not putting their plan provision in, which they said was the only thing that would avoid violating two sections of the bankruptcy code, which did not even apply. Well, I think the BAPS suggested that it's been construed as manipulating the code to basically screw the unsecured creditors. That's actually, I think that's a good explanation of what they said. And yet, Welsh, a very important case by this court, says you cannot be found to have bad faith for doing exactly what the code allows you to do. So, that's pretty clear. But that's a good way of, I think, describing their position. You're saying that's not sufficiently a factual finding? Exactly. It was precisely not a factual case-by-case because they said it would apply, it was specific plan language. They said it had to be in every case. Ours were the cases they were speaking to, but they said it had to be in every case. You don't have to use it all your time. Oh, I do want to say one thing about who the creditors are. I want to say one more thing about creditors that are involved in this. And that we find nowadays, really, a vast majority of them are debt buyers. And they don't have any evidence of the actual original contract or anything else. The rules have been changed in a way that allows them to just put in a claim for a certain dollar amount. So, that's who they are, mostly. All righty. Well, I think that- Thank you. Okay. Thank you. Let's hear from Ms. Boer. Good morning, Your Honors. I'm Jane Boer, and I'm here on behalf of Devin Durenberg, the Chapter 13 trustee for the San Jose Division of the Macropsy Court. And I'd like to thank you for allowing me to participate in oral argument today. You know, this case is really about the propriety of a very significant shift in the law in the San Jose Division with respect to estimated term plans. The trustee is here today because the lower courts ignored that legal shift and instead used sua sponte judicial findings to single out the trustee and some perceived dereliction in her duties as the blame for the use of estimated term plans. Until now, the trustee hasn't had an opportunity to defend her practices. The lower court's findings were entered without due process. They are undeserved, and they are without evidentiary support. So, let me be clear. The trustee properly did her job in each of these cases as she does in all of the Chapter 13 cases that she administered. She did a detailed analysis of the plans. She performed all the tests of confirmation, including the disposable income test that under the code. And based on her analysis, she found that she had no basis to object in any of these cases. That's important because I think if you look at the bankruptcy appellate panel decision, you can get the impression that for some reason she had a duty to object in every single bankruptcy case. She does not. Her duty is to analyze the cases, to appear and be heard, and to object when appropriate. It was not appropriate in these cases because at the time that she was analyzing these cases, the law in the San Jose Division allowed estimated term plans. What does your client want us to do? What are you asking of this court? I'm asking the trustee would love to have the findings of the bankruptcy court and the bankruptcy appellate panel that basically harmed her reputation reversed and vacated. You don't have standing to say that, though, right? Because you're not a party here. Well, I think— Well, I disagree, Your Honor. Under the Talal case that I submitted to Your Honors, there was an assistant U.S. attorney who, in the course—the criminal defendants sought dismissal on the basis that the assistant U.S. attorney had inappropriate contact with a representative party. That dismissal was actually denied, but in the course of it, the judge said that the assistant U.S. attorney had engaged in unethical conduct. Didn't the lady who was saying that case file a notice of appeal, though? I don't know for certain, but they may have. And you could have done that. I'm saying the trustee could have done that. I don't know whether we could have because we weren't involved below, but in any event, these factual findings and the lack of evidentiary support have also been raised by the appellants in this case. We're simply adding a basis for it. Would you agree that the findings against the trustee, your client, is dicta—it's not really important to either of the holdings of the BAP? I would agree that it was absolutely unnecessary to any—they certainly could have reached their legal conclusions about the estimated term plans without saying a thing about the trustee. Who hires and fires the trustee? I'm sorry? Who hires and fires the trustee in a district? She's appointed under statute, and I believe that it's her regulators, the U.S. trustee, that makes the— Who appoints, who makes the appointment and reappointment? I'm not positive. It's not the judges. It's not the judges, no. So it looks like I'm very close to the end of my time here, so I just want to say that the trustee files objections. She has always filed objections when they're appropriate. She has never made any categorical decision to not file objections or to not file certain kinds of objections. She didn't object in these cases because she believed the estimated term plans at that time under the law in the San Jose division were permissible and were co-compliant. And so we believe that the findings in the decision below are undeserved and are without support in the evidentiary record, in addition to being a violation of her due process rights. All right. Thank you, counsel. Thank you.
judges: Wardlaw, M. Smith, Bumatay